

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

MAR 1 9 2014



| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| | § | Criminal No. |
| | § | |
| vs. | § | |
| | § | 18 U.S.C. § 2 |
| | § | 18 U.S.C. § 1349 |
| (1) AUGUSTINE OLISA CHUDI | § | 18 U.S.C. § 1347 |
| EGBUNIKE, M.D., a.k.a. | § | |
| ONWA CHUDI EGBUNIKE; a.k.a. | § | |
| AUGUSTINE CHUKWUDI | § | **14-120** |
| EGBUNIKE; | § | **UNSEALED** |
| (2) CHARLES HARRIS, a.k.a. | § | **PER ORDER** |
| CELESTINE NWAJFOR , a.k.a. | § | |
| OKECHI NWAJIOFOR, a.k.a. | § | |
| CELESTINE NNAJIOFOR; | § | |
| (3) STELLA UCHEOMA AKWARANDU, | § | |
| a.k.a. STELLA ADAUGO AKWARANDU; | § | **UNDER SEAL** |
| and (4) LORETTA N. MBADUGHA, | § | |
| Defendants | § | |

**Sealed**
Public and unofficial staff access
to this instrument are
prohibited by court order.

## INDICTMENT

THE GRAND JURY CHARGES:

## COUNT 1
## CONSPIRACY TO COMMIT HEALTH CARE FRAUD
## 18 U.S.C. § 1349

### A.  INTRODUCTION

### THE MEDICARE and MEDICAID PROGRAMS

1

1.   Medicare is a federally funded health insurance program designed to provide medical care to individuals over age 65 and individuals with disabilities. The Medicare payment system is composed of two divisions:   Medicare Part A (hospital insurance) and Medicare Part B (medical insurance).   Medicare Part A helps pay for inpatient hospital stays, skilled nursing facility services, home health services and hospice care.   Medicare Part B helps pay for physician services, outpatient hospital services, medical equipment and supplies, and other health care services and supplies.   Among the types of reimbursable medical assistance available to covered persons is vestibular testing.

2.   Although Medicare is a federal program, private insurance organizations, called intermediaries or carriers, contract with Medicare to process and pay claims submitted by health care providers. Trailblazer Health Enterprises, LLC, of Dallas, Texas, has entered into a contract with Medicare to administer the Medicare Part B program for Texas.   Providers, upon receipt of their provider number, receive procedure manuals, bulletins and updates regarding billing, including local coverage determinations.   During the time frame of this indictment, these documents were mailed to providers and later were available online.

3.   The Medicaid program is a state-administered health insurance program funded by the United States Government and by the State of Texas.   The Medicaid

program helps pay for reasonable and necessary medical procedures and services provided to individuals who are deemed eligible under state low-income programs. The Texas Medicaid program is a cooperative federal-state program to furnish medical assistance to the indigent. Among the types of reimbursable medical assistance available to covered persons are vestibular testing and physical therapy related to vestibular issues.

4.     The State of Texas contracts with Texas Medicaid & Healthcare Partnership (hereinafter referred to as TMHP) to process and pay claims submitted by health care providers.

5.     The Medicaid Program in Texas may pay a portion of a claim originally submitted to Medicare in the event the patient has both Medicare and Medicaid coverage.   This portion is generally 20 percent of the Medicare allowance for the billed charge.   Such claims are sent to Medicaid once processed by Medicare. Medicaid will pay its portion if Medicare originally allowed the claim.   If a Medicaid recipient is not also a Medicare beneficiary, the claims may be submitted directly to Medicaid.

6.     Medicare and Medicaid cover vestibular testing.   The following seven billing codes represent the following vestibular diagnostic tests:

    a.     Code 92541 is a spontaneous nystagmus test, which measures eye

3

movement, with a recording. This test is administered by watching lights in different sequences. It is billed in one (1) unit. The Medicare reimbursement rate is approximately $42.94 per unit.

b.      Code 92542 is a positional nystagmus test, with a minimum of four (4) positions, with a recording. This test is administered by laying the patient down quickly with their head in different positions and with their head being lower than their shoulders. It is billed in one (1) unit. The Medicare reimbursement rate is approximately $45.02 per unit.

c.      Code 92543 is a caloric (warm and cool) vestibular test, usually involving the use of water irrigation. It constitutes four (4) tests, with a recording. It is billed in four (4) units. The Medicare reimbursement rate is approximately $84.32 per unit.

d.      Code 92544 is the optokinetic nystagmus test, with a recording. The patient watches a series of targets moving simultaneously to the right and left. It is billed in one (1) unit.

e.      Code 92545 is an oscillating tracking test, with a recording. The patient watches lights in different, moving sequences. This test is billed in one (1) unit. The Medicare reimbursement rate is approximately $33.10 per unit.

f.      Code 92546 is a sinusoidal vertical axis rotational test using a rotating

chair.   The test is usually performed in a darkened room, while lights are shown on a wall.   The patient wears goggles and sits in a chair with a safety harness. This test is billed in one (1) unit.   The Medicare reimbursement rate is approximately $63.84 per unit.

g.   Code 92547 is the use of vertical electrodes, which are attached to the patient, as part of vestibular testing, and is billed in one (1) unit.   The Medicare reimbursement rate is approximately $19.52 per unit.

7.   The following diagnostic codes may also be used as part of billing for vestibular test: 386.10, 386.12; 386.19

8.   Under Medicare and Medicaid guidelines, the individual provider, in this case DR. AUGUSTINE EGBUNIKE, agrees to submit claims that are accurate, complete and truthful, including but not limited to, claims for services actually performed and medically necessary.

9.   Further, providers agree to retain all original source documentation and medical records for five years, which includes patient records and patient files.

10.   In order to bill Medicare or Medicaid, one must be an enrolled provider.

11.   Vestibular testing usually must be performed by a licensed physician, under the direct supervision of a licensed physician or by a licensed audiologist, as defined by state and federal law, as well as by Medicare and Medicaid rules and regulations.

Physical therapy also must be performed by a licensed physical therapist, as defined by state and federal law, as well as by Medicare and Medicaid rules and regulations.

## B. THE DEFENDANTS

12.   AUGUSTINE OLISA CHUDI EGBUNIKE, M.D., also known as ONWA CHUDI EGBUNIKE, defendant herein, is a licensed physician in Texas, doing business as PRIMECARE MEDICAL ASSOCIATES, located in Houston, Texas.

13.   CHARLES HARRIS, also known as CELESTINE  NWAJFOR, and also known  as  OKECHI  NWAJIOFOR,  and  also  known  as  CELESTINE NNAJIOFOR, was doing business as CEVINE HEALTH CARE AND REHABILITATION CENTER (CEVINE), located in Houston, Texas, and as PATSTEL HEALTHCARE AND REHABILITATION SERVICES (PATSTEL), located in Houston, Texas.

14.   STELLA UCHEOMA AKWARANDU, doing business as PATSTEL HEALTHCARE  AND  REHABILITATION  SERVICES  (PATSTEL);  as UCHESSTAR HEALTHCARE & REHABILITATION, INC., doing business as UCHESSTAR  HEALTHCARE  &  REHABILITATION  SERVICES (UCHESSTAR), and as STAR REHABILITATION CENTER,INC., doing business as STAR HEALTHCARE & REHABILITATION SERVICES (STAR), all in Houston, Texas.

15. LORETTA N. MBADUGHA was doing business as BAYOU REHAB AND FAMILY SERVICE, INC., in Houston, Texas.

## C. THE CONSPIRACY

16. Beginning in or about 2006, the exact date being unknown, and continuing thereafter to in or about December of 2011, in the Houston Division of the Southern District of Texas and elsewhere, defendants

**AUGUSTINE OLISA CHUDI EGBUNIKE, M.D.,**
**a.k.a. ONWA CHUDI EGBUNIKE;**
**a.k.a. AUGUSTINE CHUKWUDI EGBUNIKE;**
**CHARLES HARRIS, a.k.a.**
**CELESTINE NWAJFOR,**
**a.k.a. OKECHI NWAJIOFOR**
**a.k.a. CELESTINE NNAJIOFOR;**
**STELLA UCHEOMA AKWARANDU,**
**a.k.a. STELLA ADAUGO AKWARNADU;**
**AND LORETTA N. MBADUGHA**

did knowingly and willfully combine, conspire, confederate and agree with each other, and with other persons known and unknown to the grand jury, to commit and aid and abet certain offenses against the United States:

a. To violate the health care fraud statute, that is, to knowingly and willfully execute and attempt to execute, a scheme or artifice: (1) to defraud a health care benefit program affecting commerce, namely the Medicare and Medicaid programs; and (2) to obtain, by means of material false and fraudulent pretenses, representations, and promises, money and property owned by, or under the custody

and control of, a health care benefit program, namely Medicare and Medicaid, in connection with the delivery of and payment for health care benefits, items and services, namely vestibular testing and other services, in violation of Title 18 United States Code, Section 1347 (health care fraud statute).

## D. OBJECT OF THE CONSPIRACY

2.    It was the object of the conspiracy for the defendants to unlawfully enrich themselves by falsely and fraudulently representing to Medicare and Medicaid that:

a.    Medicare and Medicaid claims for repetitive diagnostic vestibular testing were medically necessary; and/or performed by a licensed person or a person supervised by a physician, when in fact the testing was not performed, not medically necessary and/or not performed by a licensed person or a person supervised by a physician;

b.    Medicare and Medicaid claims for repetitive diagnostic vestibular testing were performed, when in fact beneficiaries, many of them in group homes, received a type of "balance therapy" performed by an unlicensed person who was not supervised by a physician; and

c.    Defendant EGBUNIKE billed for diagnostic vestibular testing that, in fact, was not performed by Defendant EGBUNIKE, but performed by medically unlicensed Defendants HARRIS, AKWARANDU, and MBADUGHA and/or

medically unlicensed persons employed by HARRIS, AKWARANDU and MBADUGHA.

## E. MANNER AND MEANS

18.   It was part of the conspiracy that:

19.   Defendants would and did routinely cause Medicare and Medicaid to be repetitively billed for various types of diagnostic vestibular testing on patients knowing that the services had not been performed and/or were not medically necessary.

20.   Defendant EGBUNIKE would and did routinely cause Medicare and Medicaid to be billed repetitively for various types of diagnostic vestibular testing on patients without seeing the patient(s) or without any follow-up with the patient.

21.   Defendant EGBUNIKE would and did routinely cause Medicare and Medicaid to be billed repetitively for various types of diagnostic vestibular testing on patients without any follow-up care as a result of the repetitive diagnostic vestibular testing.

22.   Defendants HARRIS, AKWARANDU and MBADUGHA were not Texas licensed physicians, licensed audiologists or licensed physical therapists, nor did they employee such licensed persons to perform vestibular diagnostic testing or physical therapy upon Medicare and Medicaid patients at any time during the time frame of the indictment.

9

23.    Defendants HARRIS, AKWARANDU and MBADUGHA would and did submit "super bills" for vestibular testing and physical therapy by and through EGBUNIKE and his medical biller, C.S.

24.    Defendant EGBUNIKE would and did pay HARRIS, AKWARANDU and MBADUGHA a portion of the Medicare and Medicaid funds paid to Defendant EGBUNIKE for the vestibular testing and physical therapy.

25.    Defendants HARRIS, AKWARANDU and MBADUGHA would and did perform some type(s) of unlicensed vestibular diagnostic testing by and through their businesses, but the testing was rarely performed as often as it was billed by EGBUNIKE, and when it was, it was not done by a licensed audiologist or under the supervision of a physician as required by Medicare and Medicaid.

26.    Defendants HARRIS, AKWARANDU and MBADUGHA would and did perform some type of unlicensed "balance therapy."   This "therapy" was performed by persons who were not licensed physical therapists as required by Medicare and Medicaid, and HARRIS, AKWARANDU and MBADUGHA would and did routinely submit "super bills" for more expensive vestibular testing.

27.    Defendants HARRIS, AKWARANDU and MBADUGHA would and did submit "super bills" to EBBUNIKE's medical biller, C.S., using similar pre-printed forms containing the same seven vestibular codes and using the same diagnostic

codes for every patient: 386.10, 386.12; 386.19.

28.     Defendant HARRIS, AKWARANDU and MBADUGHA would and did routinely meet with Defendant EGBUNIKE – at times all together – to receive their individual split(s) of the vestibular testing payments sent to Defendant EGBUNIKE by Medicare and Medicaid.

29.     Defendant HARRIS and his staff would and did fax not only CEVINE super bills to biller C.S., but would also fax "super bills" on CEVINE's fax line for AKWARANDU and MBADUGHA.

30.     Defendants HARRIS, AKWARANDU, MBADUGHA, and EGBUNIKE would and did pay biller C.S. for her billing services, based upon a percentage of the billing to Medicare.

31.     Defendant EGBUNIKE would and did write checks drawn on his Wells Fargo account x3367 to co-defendants HARRIS, AKWARANDU and MBADUGHA, splitting the Medicare and Medicaid funds Defendant EGBUNIKE received as a result of the false and fraudulent vestibular testing and physical therapy billing scheme.

32.     Defendant EGBUNIKE would and did pay PATSTEL HEALTHCARE approximately $160,029.15 from on or about April 5, 2007 through June 2, 2008, as shown by checks from Wells Fargo account x3367.

33.   Defendant EGBUNIKE would and did pay CEVINE and/or HARRIS approximately $472,697.88 from on or about March 27, 2008 through October 16, 2009, as shown by checks from Wells Fargo account x3367.

34.   Defendant EGBUNIKE would and did pay STAR, UCHESSTAR and/or AKWARANDU approximately $250,883.84 from on or about October 30, 2008 through October 19, 2009, as shown by checks from Wells Fargo account x3367.

35.   Defendant EGBUNIKE would and did pay BAYOU REHAB and/or MBADUGHA approximately $404,157.12, from on or about December 11, 2008 through October 19, 2009, as shown by checks from Wells Fargo account x3367.

36.   Defendant EGBUNIKE would and did receive Medicare and Medicaid remittance and status notices from his biller, C.S., on a regular basis, reflecting that vestibular diagnostic testing was repetitively being billed and paid for Medicare and Medicaid beneficiaries under his provider number.

37.   Defendants  HARRIS, AKWARANDU and MBADUGHA, would and did send their employees who were not licensed physicians, licensed physical therapists or licensed audiologists, into patients' homes or group homes to perform some form of vestibular testing and/or balance training, which was unsupervised by a licensed physician.

38.   Defendants would and did submit or cause to be submitted – via a computer –

12

the results of alleged, one-time vestibular testing on Medicare and Medicaid patients to a neurologist in Florida, R.N., who would evaluate the results and create a report.

39.     Defendant EGBUNIKE would and did place a copy of the Florida physician's interpretation report of the vestibular testing in some of his individual patient files. The Florida physician, R.N., was paid a one-time fee of $50 per patient evaluation and was unaware of the hundreds of vestibular codes billed on many patients.

40.     Defendants EGBUNIKE, HARRIS, AKWARANDU and MBADUGHA would and did submit directly to biller C.S., using the same preprinted form or "super bill" with the same repetitive six vestibular codes, the same three diagnostic codes, with hand-written notes showing the dates of service for each alleged vestibular test, along with the particular patient's name, address, and Medicare beneficiary number.

41.     Defendants EGBUNIKE, HARRIS, AKWARANDU and MBADUGHA would not and did not collect or attempt to collect 20 percent co-pays from beneficiaries as required by Medicare as a result of the vestibular diagnostic claims.

42.     Defendants HARRIS, AKWARANDU, MBADUGHA and other co-conspirators would and did submit vestibular testing claims on some of the same Medicare and Medicaid patients during the time frame of the indictment, including but not limited to P.A., T.S., D.W., and G.W.

43.     Defendant EGBUNIKE would and did submit vestibular diagnostic code

claims on some of the same Medicare and Medicaid patients as did other Houston physicians, including but not limited to physicians E.N., E.R.U., P.A. and R.T.

44.    Defendants HARRIS, AKWARANDU and MBADUGHA would and did visit group homes in the Houston-area and "treat" multiple patients and then submit vestibular "super bills" to EGBUNIKE to be billed to Medicare and Medicaid.

45.    Defendants HARRIS, AKWARANU and MBADUGHA would and did use the some of the same staff people to perform the unlicensed vestibular testing and balance therapy.

46.    Physician A.H., who was the treating physician for patients D.K., M.C., B.B. and P.A., would and did state that these patients did not need vestibular testing and that he never ordered vestibular testing for them.

47.    Defendant EGBUNIKE would and did bill Medicare and Medicaid from January 1, 2007 through September 30, 2011, approximately $2,951,138.00 based upon the seven vestibular testing codes.

48.    Defendant EGBUNIKE would and did cause Medicare and Medicaid from January 1, 2007 through September 30, 2011 to pay approximately $2,024,032.69 based upon the seven vestibular codes.

## F.   OVERT ACTS

49.    In furtherance of the conspiracy and to affect the objects thereof, the following

Overt Acts, among others, were committed in the Southern District of Texas, and elsewhere,

(1)   In 1996, EGBUNIKE became enrolled as a Medicare and Medicaid provider.

(2) On or about August 20, 1996, EGBUNIKE opened Wells Fargo bank account x3367, of which he is the sole signatory.  EGBUNIKE received paper claims checks from both Medicare and Medicaid, and he deposited those checks in account x3367.

(3)   On or about August of 2006, HARRIS received a Harris County assumed name certificate for Cevine Health Care and Rehabilitation Services.

(4) On or about April 18, 2008, HARRIS filed with the Texas Secretary of State incorporation papers for Cevine Health Care and Rehabilitation, Inc.

(5) On or about October 22, 2008, AKWARANDU filed Texas Secretary of State incorporation papers for Uchesstar Healthcare & Rehabilitation, Inc.

(6) On or about May 18, 2009, AKWARANDU filed with the Texas Secretary of State incorporation papers for Star Rehabilitation Center, Inc.

(7) On or about October 22, 2008, MBADUGHA filed incorporation papers with the Texas Secretary of State for Bayou Rehab and Family Services, Inc.

**AKWARANDU AND EGBUNIKE**

(8) From on or about February 17, 2009 through on or about May 28, 2009, Defendants AKWARANDU, EGBUNIKE, and others known and unknown to the Grand Jury, caused to be submitted to Medicare on approximately 28 different dates of service using seven vestibular testing codes for patient P.A., for a total billed amount of $16,640.00 with $9,234.60 being paid to Defendant EGBUNIKE.   In all, 416 vestibular tests were billed to Medicare.

(9) From on or about December 16, 2008 through on or about October 15, 2009, Defendants AKWARANDU, MBADUGHA and EGBUNIKE, and others known and unknown to the Grand Jury, caused to be submitted to Medicare on approximately 69 different dates of service using seven vestibular testing codes for patient D.W., for a total billed amount of $33,985.00 with $20,284.90 paid to EGBUNIKE. In all, 861 vestibular tests billed to Medicare.

(10) From on or about April 6, 2009 through on or about July 30, 2009, Defendants AKWARANDU and EGBUNIKE, and others known and unknown to the Grand Jury, caused to be submitted to Medicare on approximately 32 different dates of service using seven vestibular testing codes for patient R.S., for a total billed amount of $16,640.00 with $10,845.12 being paid to Defendant EGBUNIKE. In all, 416 vestibular diagnostic tests were billed to Medicare.   In addition, from on or about April 6, 2009 through July 30, 2009, AKWARANDU and EGBUNIKE, and

others known and unknown to the Grand Jury, caused to be submitted to Medicaid on approximately 32 dates of service seven vestibular diagnostic codes for patient R.S, for a total billed amount of $16,640.00 with $2,711.36 being paid to EGBUNIKE. In all, 416 vestibular tests were billed to Medicaid.

(11) From on or about August 24, 2007 through on or about July 30, 2009, Defendants AKWARANDU and EGBUNIKE, and others known and unknown to the Grand Jury, caused to be submitted to Medicare on approximately 71 different dates of service using seven vestibular testing codes for patient H.H., for a total billed amount of $35,060 with $22,792.99 being paid to Defendant EGBUNIKE. In all, 892 vestibular tests were billed to Medicare.   In addition, from on or about February 17, 2009 through July 30, 2009, AKWARANDU and EGBUNIKE, and others known and unknown to the Grand Jury, caused to be submitted to Medicaid on approximately 40 dates of service using seven vestibular diagnostic codes for patient H.H., for a total billed amount of $20,800 with $3,389.20 being paid to EGBUNIKE. In all, 520 vestibular tests were billed to Medicaid.

## HARRIS AND EGBUNIKE

(12) Defendant EGBUNIKE and HARRIS, and others known and unknown to the Grand Jury, from on or about March 21, 2007 through January 21, 2009, caused Medicare to be billed $72,940.00 with $43,717.94 being paid to Defendant

EGBUNIKE.  In all, 1,812 tests were billed on patient G.W. under seven codes for diagnostic vestibular testing that was not provided, not medically necessary, and/or not performed by a licensed person. Then from on or about February 16, 2009 through May 28, 2009, Defendant HARRIS and Dr. E.R.U. caused Medicare to be billed $22,390 for patient G.W. representing 405 tests under seven codes for diagnostic vestibular testing that was not provided, not medically necessary and/or not performed by a licensed, supervised person(s). In all more than, 2,200 diagnostic tests were billed upon patient G.W.

(13) From on or about May 21, 2008 through on or about September 3, 2009, Defendants HARRIS and EGBUNIKE, and others known and unknown to the Grand Jury, caused to be submitted to Medicare on approximately 110 different dates of service using seven vestibular testing codes for patient R.D., for a total billed amount of $50,960 with $33,170.16 paid to Defendant EGBUNIKE. In all, 1,326 vestibular tests were billed to Medicare.

(14) From on or about October 7, 2008 through on or about September 10, 2009, HARRIS and EGBUNIIKE, and others known and unknown to the Grand Jury, caused to be submitted to Medicare on approximately 67 dates of service using seven vestibular diagnostic codes for patient A.H., for a total billed amount of $31,180.00, with $20,133.10 being paid to EGBUNIKE.  In all, 810 vestibular tests were billed

to Medicare. In addition, from on or about October 7, 2008 through September 10, 2009, HARRIS and EGBUNIKE, and others known and unknown to the Grand Jury, caused to be submitted to Medicaid on approximately 67 dates of service using seven vestibular diagnostic codes for patient A.H., for a total billed amount of $31,180 with $5,168.67 being paid to EGBUNIKE. In all, 810 vestibular tests were billed to Medicaid.

(15) From on or about October 7, 2008 through on or about September 10, 2009, HARRIS and EGBUNIIKE, and others known and unknown to the Grand Jury, caused to be submitted to Medicare on approximately 66 dates of service using seven vestibular diagnostic codes for patient T.M., for a total billed amount of $30,720.00, with $19,832.28 being paid to EGBUNIKE. In all, 798 vestibular tests were billed to Medicare. In addition, from on or about October 7, 2008 through September 10, 2009, HARRIS and EGBUNIKE, and others known and unknown to the Grand Jury, caused to be submitted to Medicaid on approximately 66 dates of service using seven vestibular diagnostic codes for patient T.M., for a total billed amount of $30,720 with $5,093.46 being paid to EGBUNIKE. In all, 798 vestibular tests were billed to Medicaid.

(16) From on or about October 1, 2007 through on or about September 3, 2009, Defendants HARRIS and EGBUNIKE, and others known and unknown to the Grand

Jury, caused to be submitted to Medicare on approximately 77 different dates of service using seven vestibular diagnostic codes for patient R.D.S., for a total billed amount of $35,660 with $22,532.48 paid to Defendant EGBUNIKE. In all, 928 vestibular tests were billed to Medicare.   In addition, from on or about October 1, 2008 through December 31, 2008, HARRIS and EGBUNIKE, and others known and unknown to the Grand Jury, caused to be submitted to Medicaid on approximately 22 dates of service using seven vestibular diagnostic codes for patient R.D.S., for a total billed amount of $10,240 with $1,674.42 being paid to EGBUNIKE.

(17) From on or about October 29, 2007 through on or about September 10, 2009, Defendants HARRIS and EGBUNIKE, and others known and unknown to the Grand Jury, caused to be submitted to Medicare on approximately 71 different dates of service using seven vestibular diagnostic codes for patient C.M., for a total billed amount of $33,820 with $21,344.28 paid to Defendant EGBUNIKE. In all, 880 vestibular tests were billed to Medicare.   In addition, from on or about October 29, 2007 through September 10, 2009, HARRIS and EGBUNIKE, and others known and unknown to the Grand Jury, caused to be submitted to Medicaid on approximately 71 dates of service using seven vestibular diagnostic codes for patient C.M., for a total billed amount of $33,820 with $5,110.78 being paid to EGBUNIKE.   In all, 880 vestibular tests were billed to Medicaid.

## MBADUGHA AND EGBUNIKE

(18) From on or about July 23, 2007 through on or about August 27, 2009, Defendants MBADUGHA and EGBUNIKE, and others known and unknown to the Grand Jury, caused to be submitted to Medicare on approximately 69 different dates of service using seven vestibular testing codes for patient D.K., for a total billed amount of $33,900 with $21,170.41 paid to Defendant EGBUNIKE. In all, 876 vestibular diagnostic tests were billed to Medicare.  In addition, from on or about July 23, 2007 through August 27, 2009, MBADUGHA and EGBUNIKE, and others known and unknown to the Grand Jury, caused to be submitted to Medicaid on approximately 69 dates of service for patient D.K., for a total billed amount of $33,900 with $5,292.94 being paid to EGBUNIKE. In all, 876 vestibular tests were billed to Medicaid.

(19) From on or about November 17, 2008 through on or about August 25, 2009, Defendants MBADUGHA and EGBUNIKE, and others known and unknown to the Grand Jury, caused to be submitted to Medicare on approximately 72 different dates of service using seven vestibular diagnostic codes for patient L.B., for a total billed amount of $34,800 with $21,847.30 being paid to Defendant EGBUNIKE. In all, 905 vestibular tests were billed to Medicare.

(20) From on or about July 23, 2007 through on or about August 27, 2009,

Defendants MBADUGHA and EGBUNIKE, and others known and unknown to the Grand Jury, caused to be submitted to Medicare on approximately 78 different dates of service using seven vestibular testing codes for patient M.C., for a total billed amount of $40,800 with $23,077.30 being paid to Defendant EGBUNIKE. In all, 1,056 vestibular tests were billed to Medicare. In addition, from on or about November 12, 2008 through August 27, 2009, MBADUGHA and EGBUNIKE, and others known and unknown to the Grand Jury, caused to be submitted to Medicaid on approximately 76 dates of service using seven vestibular diagnostic codes for patient M.C., for a total of $39,460 billed, with $5,764.57 being paid to EGBUNIKE. In all, 1,026 vestibular tests being billed to Medicaid.

(21) From on or about November 17, 2008 through on or about August 27, 2009, Defendants MBADUGHA and EGBUNIKE, and others known and unknown to the Grand Jury, caused to be submitted to Medicare on approximately 86 different dates of service using seven vestibular testing codes for patient N.H., for a total billed amount of $30,660 with $20,024.23 being paid to Defendant EGBUNIKE. In all, 797 vestibular tests were billed to Medicare.

(22) From on or about November 13, 2008 through on or about August 27, 2009, Defendants MBADUGHA and EGBUNIKE, and others known and unknown to the Grand Jury, caused to be submitted to Medicare on approximately 73 different

dates of service using seven vestibular testing codes for patient B.B., for a total billed amount of $34,360 with $22,131.01 being paid to Defendant EGBUNIKE. In all, 890 vestibular tests billed to Medicare.

(23)   From on or about January 24, 2007 through on or about August 27, 2009, Defendants MBADUGHA and EGBUNIKE causes to be submitted to Medicare on approximately 73 dates of service using seven vestibular codes for patient A.C., with a total submitted amount to Medicare in claims of $35,120, with $22,056.27 paid.   In all, 906 vestibular tests were billed to Medicare.

(24) In furtherance of the conspiracy, and to effect the objects thereof, the defendant performed and caused to be performed, among others, the acts set forth in Counts 2-14 of this Indictment, which are hereby re-alleged and incorporated as if fully set forth in this Count of the Indictment.

**In violation of Title 18, United States Code, Section 1349.**

### COUNTS 2-14
### HEALTH CARE FRAUD – 18 U.S.C. 1347 AND 2

### A.   INTRODUCTION

1.   Section A of Count One of this Indictment is re-alleged and incorporated here as though fully set forth herein.

2.   Beginning in or about 2006, the exact date being unknown, and continuing thereafter to in or about December of 2011, defendants identified herein, billed,

caused to be billed $2,951,138.00 based upon the seven vestibular testing codes, with approximately $2,024,032.69 paid to defendants identified herein, based upon the seven vestibular codes.

## B.  PURPOSE OF THE SCHEME TO DEFRAUD

3.    It was the purpose of the scheme to defraud to obtain money from the Medicare and Medicaid programs by repetitively billing all seven vestibular codes, regardless of whether the services were performed, medically necessary or performed by an unlicensed, unsupervised person.

## C.  MANNER AND MEANS

4.    Beginning on or about 2006, and continuing thereafter in or about December of 2011, in the Houston Division of the Southern District of Texas, the defendants,

**AUGUSTINE OLISA CHUDI EGBUNIKE, M.D.,
a.k.a. ONWA CHUDI EGBUNIKE;
a.k.a. AUGUSTINE CHUKWUDI EGBUNIKE;
CHARLES HARRIS, a.k.a.
CELESTINE NWAJFOR,
a.k.a. OKECHI   NWAJIOFOR,
a.k.a. CELESTINE NNAJIOFOR;
STELLA UCHEOMA AKWARANDU,
a.k.a. STELLA ADAUGO AKWARNADU;
AND LORETTA MBADUGHA**

as identified in the specific counts below, aiding and abetting each other, did knowingly and willfully execute and attempt to execute a scheme and artifice to defraud a health care benefit program affecting commerce, namely Medicare and

Medicaid, and to obtain by means of material, false and fraudulent pretenses, representations and promises, any of the money and property owned by, and under the custody and control of, a health care benefit program in connection with the delivery of and payment for health care benefits, items and services, to wit; on or about the listed dates, the defendants caused to be submitted false and fraudulent claims to Medicare for vestibular testing as indicated below:

### AKWARANDU (STAR/UCHESTAR) and EGBUNIKE

| Ct | Patient Medicare/ Medicaid Number | Code | Dates of Service (on or about) | Approx. Amount Billed to Medicare | False representation (including but not limited to) |
|---|---|---|---|---|---|
| 2 | Medicare No. X4175 P. A. | Codes: 92541 92542 92543 92544 92545 92546 92547 | 4-8-09 | $520.00 | Vestibular testing was not performed, not medically necessary and/or performed by unlicensed individuals |
| 3 | Medicare No. X3913A D.W. | Codes: 92541 92542 92543 92545 92546 92547 | 3-31-09 | $714.19 | Vestibular testing was not performed, not medically necessary and/or performed by unlicensed, unsupervised persons. |

| 4 | Medicare No. X6101A R.S. | Codes: 92541 92542 92543 92544 92545 92546 92547 | 5-7-09 | $520.00 | Vestibular testing was not performed, not medically necessary and/or performed by unlicensed, unsupervised persons. |

## HARRIS (CEVINE) AND EGBUNIKE

| Ct | Patient Medicare/ Medicaid Number | Code | Dates of Service (on or about) | Approx. Amount Billed to Medicare | False representation (including but not limited to) |
|----|----|----|----|----|----|
| 5 | Medicare No. X2587A R.D. | Codes: 92541 92542 92543 92545 92546 92547 | 4-27-09 | $460.00 | Vestibular testing was not performed, not medically necessary and/or performed by unlicensed, unsupervised persons. |
| 6 | Medicare No. x4395A A.H. | Codes: 92541 92542 92543 92545 92546 92547 | 5-18-09 | $460.00 | Vestibular testing was not performed, not medically necessary and/or performed by unlicensed, unsupervised persons. |

| 7 | Medicare No. X9048A<br><br>T.M. | Codes:<br>92541<br>92542<br>92543<br>92545<br>92546<br>92547 | 6-15-09 | $460.00 | Vestibular testing was not performed, not medically necessary and/or performed by unlicensed, unsupervised persons. |

### MBADUGHA (BAYOU) AND EGBUNIKE

| Ct | Patient Medicare/ Medicaid Number | Code | Dates of Service (on or about) | Approx. Amount Billed to Medicare | False representation (including but not limited to) |
|---|---|---|---|---|---|
| 8 | Medicare No. X3913a D.W. (see ct.3) | Codes:<br>92541<br>92542<br>92543<br>92545<br>92546<br>92547 | 7-29-09 | $460.00 | Vestibular testing was not performed, not medically necessary and/or performed by unlicensed, unsupervised persons |
| 9 | Medicare No. X5358A L.B. | Codes:<br>92541<br>92542<br>92543<br>92545<br>92546<br>92547 | 6-2-09 | $460.00 | Vestibular testing was not performed, not medically necessary and/or performed by unlicensed, unsupervised persons. |

| 10 | Medicare No. X1941 D.K. | Codes: 92541 92542 92543 92544 92545 92546 92547 | 6-2-09 | $460.00 | Vestibular testing was not performed, not medically necessary and/or performed by unlicensed, unsupervised persons. |
|----|----|----|----|----|----|
| 11 | Medicare No. X2829A B.B. | Codes: 92541 92542 92543 92545 92546 92547 | 7-07-09 | $460.00 | Vestibular testing was not performed, not medically necessary and/or performed by unlicensed, unsupervised persons. |
| 12 | Medicare No. x4730A M.C. | 92541 92542 92543 92544 92545 92546 92547 | 6-09-09 | $460.00 | Vestibular testing was not performed, not medically necessary and/or performed by unlicensed, unsupervised persons. |
| 13 | Medicare No. X7182A N.H. | 92541 92542 92543 92545 92546 92547 | 6-9-09 | $460.00 | Vestibular testing was not performed, not medically necessary and/or performed by unlicensed, unsupervised persons. |
| 14 | Medicare No. x1741A A.C. | 92541 92542 92543 92545 92546 92547 | 3-31-09 | $920.00 | Vestibular testing was not performed, not medically necessary and/or performed by unlicensed, unsupervised persons |

All in violation of 18 U.S.C. Sections 2 and 1347.

## NOTICE OF FORFEITURE
### 18 U.S.C. Section 982(a)(7)

Pursuant to Title 18, United States Code, Section 982(a)(7), the United States

of America gives notice to the defendants,

**AUGUSTINE OLISA CHUDI EGBUNIKE, M.D.,**
**a.k.a. ONWA CHUDI EGBUNIKE;**
**a.k.a. AUGUSTINE CHUKWUDI EGBUNIKE;**
**CHARLES HARRIS, a.k.a.**
**CELESTINE NWAJFOR,**
**a.k.a. OKECHI   NWAJIOFOR,**
**a.k.a. CELESTINE NNAJIOFOR;**
**STELLA UCHEOMA AKWARANDU,**
**a.k.a. STELLA ADAUGO AKWARNADU;**
**and LORETTA MBADUGHA;**

(hereinafter collectively referred to as "Defendants") that, upon conviction of

conspiracy in violation of Title 18, United States Code, Section 1349, or of a

violation of Title 18, United States Code, Section 1347 as charged herein, the

United States of America shall forfeit all property, real or personal, that constitutes

or is derived, directly or indirectly, from gross proceeds traceable to such offenses.

### Money Judgment

Defendants are further notified that, upon conviction, the United States of

America shall seek a personal money judgment in an amount equal to the total

value of the property subject to forfeiture, which is at least $ 2,024,032.69, for which

the Defendants may be jointly and severally liable.

## Property Subject to Forfeiture

Defendants are further notified that, upon conviction, the property subject to

forfeiture includes, but is not limited to, the following:

(a) $ 2,024,032.69, or more, in gross proceeds traceable to the offense

charged in Count 1 of the Indictment;

(b) all gross proceeds traceable to the scheme to defraud charged in

Counts 2-14 of the Indictment, including, but not limited to, the

amounts stated in Counts 2-14 of the Indictment; and

(c) real property together with all improvements, buildings, structures

and appurtenances located at 606 Royal Lakes Boulevard, Richmond,

Texas 77469, and legally described as follows:

> Lot 20, Block 5, Replat of ROYAL LAKES ESTATES,
> SECTION 1, a subdivision in Fort Bend County, Texas,
> according to the map or plat thereof recorded in Slide
> 1854/B, of the Plat Records of Fort Bend County, Texas
>
> The owner of record is listed as Loretta N.
> Louis-Mbadugha, a.k.a. Loretta A. Mbadugha.

## Substitute Assets

Defendants are notified that in the event that property subject to forfeiture, as

a result of any act or omission of any defendant:

(A) cannot be located upon the exercise of due diligence;

(B) has been transferred or sold to, or deposited with, a third party;

(C) has been placed beyond the jurisdiction of the court;

(D) has been substantially diminished in value; or

(E) has been commingled with other property which cannot be divided without difficulty,

the United States will seek to forfeit any other property of the Defendants up to the total value of the property subject to forfeiture pursuant to Title 21, United States Code, Section 853(p), incorporated by reference in Title 18, United States Code, Section 982(b)(1).

A TRUE BILL

Original Signature on File

FOREPERSON

KENNETH MAGIDSON
UNITED STATES ATTORNEY

BY: Suzanne Bradley
Special Assistant United States Attorney

31